```
              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

Nancy Boucher, Individually
and as Personal Representative
of the Estate of Raymond Boucher

    v.                                 Civil No. 14-cv-141-LM
                                                              Opinion No. 2014 DNH 170

Tyler Rioux and Industrial
Concrete Services, Inc.


**O R D E R**

In a case that arises from a traffic accident that took the life of her husband, Nancy Boucher ("Boucher") has sued truck driver Tyler Rioux ("Rioux") and his employer, Industrial Concrete Services, Inc. ("Industrial Concrete"). Against Rioux, Boucher asserts claims for negligence (Counts I and II), loss of consortium (Count III), and negligent infliction of emotional distress (Count IV). In Count V, Boucher asserts that Industrial Concrete is vicariously liable for Rioux's tortious conduct. Before the Court is Industrial Concrete's motion to dismiss Count III and a portion of Count V, for lack of subject-matter jurisdiction, see Fed. R. Civ. P. 12(b)(1). Industrial Concrete argues that those claims are moot as a result of an offer of judgment it made to Boucher. Boucher objects. For the reasons that follow, Industrial Concrete's motion to dismiss is denied.

**Standard of Review**

"A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity and, of course, subject matter jurisdiction." Pérez v. P.R. Nat'l Guard, 951 F. Supp. 2d. 279, 287 (D.P.R. 2013) (citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001)). "When a case is moot — that is, when the issues presented are no longer live or when the parties lack a generally cognizable interest in the outcome — a case or controversy ceases to exist, and dismissal of the action is compulsory." Redfern v. Napolitano, 727 F.3d 77, 83-84 (1st Cir. 2013) (quoting Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001); citing Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001)).

**Background**

The following facts are drawn from plaintiff's complaint. See Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011). Boucher's husband of 40 years was in the yard of their home when Rioux, who was working for Industrial Concrete at the time, drove a truck into him and killed him.

In Count III of her complaint, Boucher "demands judgement against [Rioux] for compensatory damages as fully allowed by New

2

Hampshire RSA 556:12, II[,] for her loss of comfort, society and companionship." Compl. (doc. no. 1-1) 3. In Count V, she "demands judgement against the defendant, Industrial Concrete Services, Inc., [under a theory of vicarious liability,] for compensatory damages for each count and each damage alleged in the previous counts against Defendant, Rioux." Id. at 5.

In its answer, Industrial Concrete "admit[ted] legal fault for the accident." Answer (doc. no. 6) ¶ 7. Further, Industrial Concrete admitted that Mr. Boucher's death was "a direct and proximate result of the collision." Id. ¶ 8. Finally, Industrial Concrete has admitted

> that as a consequence of Mr. Boucher's death, Mrs. Boucher has suffered the loss of his society, comfort and companionship. Further, [Industrial Concrete] admit[ted] liability for the claim of the loss of comfort, society, companionship, and is ready, willing, and has proposed to pay the full amount to which the plaintiff is entitled . . . under the statutory laws of N.H. RSA 556:12[,] II, the sum of $150,000. [Industrial Concrete also] admit[ted] liability and damages as to Count III, and propose[d] to confess judgment to that Count and pay into Court the amount to which the plaintiff is entitled.

Id. ¶ 16.

Industrial Concrete made an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure in the amount of $150,000, which is the statutory maximum for a loss-of-consortium claim. See Industrial Concrete's Mot. to Dismiss,

Ex. A (doc. no. 8-2), at 3.  Boucher rejected Industrial Concrete's offer of judgment.

## Discussion

Industrial Concrete moves to dismiss Count III and the portion of Count V that pertains to Boucher's claim for loss of consortium for lack of subject-matter jurisdiction because those claims have been rendered moot by its Rule 68 offer of judgment in the full amount authorized by RSA 556:12, II.  Boucher objects.

Prior to Justice Kagan's dissent in Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013), such relief was <u>readily</u> available to a defendant who made an offer of judgment under Rule 68 that completely satisfied a plaintiff's claim. For example, there is the Second Circuit's decision in Abrams v. Interco, Inc., 719 F.2d 23 (2d Cir. 1983).  That case was a putative class action in which class certification was denied. Id. at 25.  The defendant offered to consent to judgment in favor of individual plaintiffs and pay them three times their actual damages plus costs and reasonable attorney's fees.  Id. The court of appeals affirmed the district court's dismissal of plaintiffs' claims on grounds that there was "no justification for taking the time of the court and the defendant in the pursuit of minuscule individual claims which defendant has more

4

than satisfied." Id. at 32. Several other circuits have reached generally similar conclusions. See, e.g., Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991) (holding that plaintiff forfeits his claim if he refuses a Rule 68 offer of judgment that fully satisfies his entire demand); O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 575 (6th Cir. 2009) (holding that where defendant makes offer of judgment that satisfies plaintiff's entire demand, "the better approach is to enter judgment in favor of the plaintiffs in accordance with the defendants' Rule 68 offer of judgment"); see also Diaz v. First Am. Home Buyers Prot. Corp., 732 F.3d 948, 953 n.5 (9th Cir. 2013) (providing an extensive survey of pre-Genesis case law and commentary).

A. Justice Kagan's Dissent in Genesis

The tide shifted in Genesis. In that case, the plaintiff brought a "collective action" on her own behalf, and on behalf of other similarly situated employees, against her employer for violating the Fair Labor Standards Act. See 133 S. Ct. at 1527 (citing Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169-70 (1989), for the definition of "collective action").[1]

---

[1] Judge Krieger has recently explained the difference between a collective action and a class action:

> A "collective action" under [29 U.S.C.] § 216(b) differs from the traditional class action under Fed. R. Civ. P. 23, in that Rule 23 class actions are

Simultaneous with its answer and before any other plaintiffs had opted in, the defendant made a Rule 68 offer of judgment in the amount of $7,500 plus reasonable attorney's fees, contingent upon the offer being accepted within ten days.  See id.  After the plaintiff let the offer lapse, the district court granted the defendant's motion to dismiss for lack of subject-matter jurisdiction.  See id.  On appeal, the Third Circuit ruled that the plaintiff's individual claim was moot, but reversed and remanded the case in order to allow the plaintiff to seek "conditional certification."[2]  Id.  The defendant appealed to the Supreme Court.  In a 5-4 decision reversing the court of

---

> generally "opt-out," such that class members are presumptively treated as remaining in the litigation class unless they affirmatively request to be excluded.  A collective action under § 216(b) results in notice of the action being sent to all potential "class" members, but only those members who affirmatively "opt in" to the action by filing a consent form become joined in the litigation.

Delgado v. Castellino Corp., No. 13-cv-03379-MSK-MJW, 2014 WL 4339232, at *1 n.1 (D. Colo. Sept. 2, 2014).

[2]  The Genesis majority had this to say about the Third Circuit's reference to conditional certification:

> Lower courts have borrowed class-action terminology to describe the process of joining co-plaintiffs under 29 U.S.C. § 216(b).  While we do not express an opinion on the propriety of this use of class-action nomenclature, we do note that there are significant differences between certification under Federal Rule of Civil Procedure 23 and the joinder process under § 216(b).

133 S. Ct. at 1527 n.1.

appeals, the majority noted that the plaintiff conceded in the district court that "an offer of complete relief will generally moot [a] claim." Id. at 1529.  Due to that concession, the Court expressly declined to reach the mootness issue, and assumed without deciding that a plaintiff's claim will become moot following an unaccepted Rule 68 offer of judgment that would provide the plaintiff with complete relief.  See id. at 1529, 1532.

In a dissent that was joined by Justices Ginsburg, Breyer, and Sotomayor, Justice Kagan addressed the very issue that the majority declined to address.  See id. at 1532 (Kagan, J., dissenting).  Justice Kagan relied on the language of Rule 68 to explain that courts have no power under that rule to enter judgment on an unaccepted offer of judgment:

> When a plaintiff rejects such an offer — however good the terms — her interest in the lawsuit remains just what it was before.  And so too does the court's ability to grant her relief.  An unaccepted settlement offer — like any unaccepted contract offer — is a legal nullity, with no operative effect.  As every first-year law student learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made.  Nothing in Rule 68 alters that basic principle; to the contrary, that rule specifies that an unaccepted offer is considered withdrawn.  So assuming the case was live before — because the plaintiff had a stake and the court could grant relief — the litigation carries on, unmooted.

Id. at 1533-34 (citations, quotation marks and alterations omitted).  Mincing no words, Justice Kagan admonished lower

7

courts as follows: "So a friendly suggestion to the Third Circuit: Rethink your mootness-by-unaccepted-offer theory. And a note to all other courts of appeals: Don't try this at home." Id. at 1534. Post-Genesis jurisprudence in both the circuit courts and the district courts has taken a favorable view of Justice Kagan's dissent.

    B. Responses in the Circuits

The most notable application of Justice Kagan's dissent is the Ninth Circuit's decision in Diaz. In that case, which was a class action, the district court denied the plaintiff's motion for class certification. See 732 F.3d at 950. Subsequently, the defendant made a Rule 68 offer of judgment on the plaintiff's remaining individual claims. See id. The offer did not address plaintiff's demands for injunctive and declaratory relief. See id. at 951. When the plaintiff did not accept the Rule 68 offer, the defendant moved for dismissal for lack of subject-matter jurisdiction. See id. at 950. In granting the motion, the district court first held that the plaintiff was not entitled to either injunctive or declaratory relief, and then found that the offer of judgment mooted the plaintiff's remaining claim. See id. at 950-51. Relying on the dissent in Genesis, the Ninth Circuit vacated the district court's dismissal for lack of subject-matter jurisdiction because "'Rule [68] provides no appropriate mechanism for a court to terminate

8

a lawsuit without the plaintiff's consent.'" Id. at 954 (quoting Genesis, 133 S. Ct. at 1536 (Kagan, J., dissenting)).

The Seventh Circuit, which once held that a plaintiff forfeits his claim if he refuses a Rule 68 offer of judgment that fully satisfies his entire demand, see Rand, 926 F.2d at 596, has questioned that holding in light of Justice Kagan's dissent and Diaz:

> The circuits are split on whether an unaccepted settlement offer can render a case moot. Compare, e.g., Diaz . . . (no), with Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 370 (4th Cir. 2012) (yes). The Supreme Court granted certiorari in Genesis . . ., to resolve this split but ultimately decided that case on narrower grounds. The circuit split remains, but there are reasons to question our approach to the problem. See id. at 1533–34 (Kagan, J., dissenting). Scott does not challenge our circuit's view, so we will continue to await a resolution of the split.

Scott v. Westlake Servs. LLC, 740 F.3d 1124, 1126 n.1 (7th Cir. 2014) (parallel citation omitted).[3]

In the circuit courts, there are only two counterweights to Diaz and Scott, but they are very light. In Hrivnak v. NCO Portfolio Management, Inc., the Sixth Circuit: (1) cited the majority opinion in Genesis, see 719 F.3d 564, 567 (6th Cir.

---

[3] While Scott could be read as suggesting that the Supreme Court granted certiorari in Genesis to resolve a circuit split involving Diaz and Warren, that was not the case, given that Genesis was decided before Diaz. The Supreme Court described the circuit split it identified this way: "Compare, e.g., Weiss v. Regal Collections, 385 F.3d 337, 340 (3d Cir. 2004) with McCauley v. Trans Union, LLC, 402 F.3d 340, 342 (2d Cir. 2005)." Genesis, 133 S. Ct. at 1528 n.3.

9

2013); (2) restated the rule from O'Brien that a case or controversy may be mooted when "an offer of judgment [gives] the plaintiff *everything* he has asked for as an individual [which] means his 'entire demand,'" Hrivnak, 719 F.3d at 567 (emphasis in the original); and (3) did not mention Justice Kagan's dissent.  But, in Hrivnak, there was no reason for the court to reconsider O'Brien because the Hrivnak "defendants did not offer to satisfy all of Hrivnak's individual demands," id. at 568.  Thus, Hrivnak cannot be counted as a rejection of Justice Kagan's reasoning.  Similarly, in Doyle v. Midland Credit Management, Inc., the Second Circuit relied upon its earlier decision in Abrams to affirm the dismissal of a claim as moot, due to the defendant's unaccepted offer of judgment, see 722 F.3d 78, 80 (2d Cir. 2013).  The court did not cite Justice Kagan's dissent or reconsider Abrams, but it had no cause to do so; the only issue on appeal was whether the district court correctly treated an oral offer at a motion hearing as a Rule 68 offer of settlement.  See Doyle, 727 F.3d at 80-81.  In short, neither Hrivnak nor Doyle gives this court any reason not to adopt the reasoning in Justice Kagan's dissent.

    C. Responses in the District Courts

    Responses to Justice Kagan's dissent in the district courts are in line with those in the circuit courts.  In a recent district-court case from this circuit, Yaakov v. ACT, Inc.,

Judge Hillman relied on the reasoning in Diaz and elected to heed Justice Kagan's admonition in Genesis, see 987 F. Supp. 2d 124, 128 (D. Mass. 2013). In Yaakov, the plaintiff filed a class action under the Telephone Consumer Protection Act. See id. at 125. The parties agreed on a deadline for class certification, and before the deadline expired, the defendant made a Rule 68 offer of judgment for what appeared to be the full amount he could have recovered on his claim. See id. When the offer was not accepted, the defendant filed a motion to dismiss for lack of subject-matter jurisdiction. See id. at 126. Judge Hillman denied the motion, stating that he was

> persuaded by [the reasoning] expressed [by] the Ninth Circuit in Diaz and by Justice Kagan's dissent in Genesis Healthcare. By its terms, Rule 68 gives [a] plaintiff the ability to either accept or reject an offer, and gives a court authority to enter judgment only when a plaintiff accepts an offer. . . . An "offer," rather than "order," "ruling," or other like terms, gives the offeree the ability to accept its terms or reject it and proceed unhindered. . . . Here, the [p]laintiff chose the latter course, and, having allowed the offer to lapse, still has an unsatisfied claim that can be redressed by the Court.

Id. at 128 (citations and some internal quotation marks omitted).[4]

Delgado v. Castellino Corp., No. 13-cv-03379-MSK-MJW, 2014 WL 4339232 (D. Colo. Sept. 2, 2014), is another district-court

---

[4] The district court amended its decision when it granted the defendant's motion to certify the decision for interlocutory review. See Yaakov, 987 F. Supp. 2d at 129-32.

case from a circuit without binding precedent requiring dismissal of a claim as moot when a defendant makes an unaccepted Rule 68 offer that grants the plaintiff all the relief requested.  In that case, Judge Krieger: (1) ultimately went against an order she had issued in an earlier case,[5] id. at *4; (2) found "certain aspects of Justice Kagan's dissent in Genesis persuasive," id.; (3) "share[d] the Genesis dissent's doubt that an unaccepted Offer of Judgment, even [one] affording full relief, can operate to render an individual's claim moot," id.  She summed up her decision this way:

> Ultimately, this Court elects to err on the side of caution, allowing Mr. Delgado's claims to proceed.  Four Justices of the Supreme Court emphatically reject the notion that an unaccepted Offer of Judgment can render a claim moot.  If the majority in Genesis had affirmed that doctrine, or even expressed some support for it, this Court might be inclined to concede the doctrine's continuing vitality.  But they did not — beyond acknowledging the existing Circuit split on the question and carefully construing the grant of certiorari to avoid reaching that matter, the majority gave no signal that it viewed the "mootness-by-unaccepted-offer theory" with any degree of favor.  Similarly, the 10th Circuit has itself chosen to carefully avoid deciding the question.  As between extremely vocal opponents of the doctrine on one side, and an absence of any vocal proponents for it on the other, this Court is compelled to conclude that the doctrine is waning in power.

Id. at *3.

---

[5] That case is Miranda v. Receivables Performance Management LLC, No. 12-cv-02507-MSK-MJW, 2013 WL 3958367 (D. Colo. Aug. 1, 2013).

Of course, not all district judges have the freedom that Judges Hillman and Krieger enjoyed; binding precedent in several circuits compels dismissal of claims when a defendant makes a Rule 68 offer of judgment that provides the plaintiff with all the relief he requested. Still, while adhering to circuit precedent, several district judges have expressed their reluctance to do so, and have praised Justice Kagan's dissent.

For example, in a district-court decision from the Second Circuit, Judge Furman had this to say:

> As the Court made clear during the oral argument . . ., there are good reasons to question the proposition that an unaccepted, or rejected, offer of judgment under Rule 68 can moot a plaintiff's claim. Put differently, if the Court were operating on a blank slate, it might well agree with Justice Kagan's view that an unaccepted offer of judgment "is a legal nullity, with no operative effect." Genesis Healthcare Corp., 133 S. Ct. at 1533 (Kagan, J., dissenting). As the Court noted, however, the "ship has sailed" on that question, at least in this Circuit, as the Court of Appeals has made clear . . . that an unaccepted offer of judgment can moot a plaintiff's claim. See Abrams . . ., 719 F.2d [at] 32 . . . (Friendly, J.) ("[T]here is no justification for taking the time of the court and the defendant in the pursuit of minuscule individual claims which defendant has more than satisfied.").

Pla v. Renaissance Equity Holdings LLC, No. 12 Civ. 5268(JMF), 2013 WL 3185560, at *4 (S.D.N.Y. June 24, 2013) (citations to the record omitted).

In a case from a district court in the Sixth Circuit, Judge Cohn spoke similarly:

> The Court is cognizant that this result may well have been different had the dissent's opinion in Genesis Healthcare carried the day. However, this Court is bound by the majority's opinion in Genesis Healthcare and the Sixth Circuit's similar published opinion in O'Brien. See, e.g., Darrah v. City of Oak Park, 255 F.3d 301, 309 (6th Cir. 2001) (explaining that a published Sixth Circuit opinion is controlling authority and binding on subsequent panels unless inconsistent with a decision of the United States Supreme Court requires modification of the decision). Although the Court sees Justice Kagan's dissent in Genesis Healthcare as the right decision, it is limited [by] binding Sixth Circuit precedent, which is consistent with the majority's opinion in Genesis Healthcare. As much as the Court may disagree with the result, it has no authority to alter the decisions in Genesis Healthcare and O'Brien.

Hanover Grove Consumer Housing Coop. v. Berkadia Comm'l Mortg., LLC, No. 13-13553, 2014 WL 354674, at *7 n.3 (E.D. Mich. Jan. 31, 2014); see also Derry v. Buffaloe & Assocs., PLC, No. 2:12-CV-303, 2014 WL 460879, at *4 n.5 (E.D. Tenn. Feb. 5, 2014) (rejecting plaintiff's reliance on Justice Kagan's dissent in light of circuit precedent); McGhee v. Buffaloe & Assocs., PLC, No. 2:12-CV-333, 2014 WL 460880, at *4 n.5 (E.D. Tenn. Feb. 5, 2014) (same).

Finally, in a district court-decision from the Fifth Circuit, Judge Ellison echoed the sentiments of Judges Furman and Cohn:

> Justice Kagan exhorted the Third Circuit to "[r]ethink [its] mootness-by-unaccepted-offer theory"; she urged "all other courts of appeals [not to] try this at home."

> Plaintiffs cite the [Genesis] dissent throughout their briefing and with good reason.  This Court finds Justice Kagan's view persuasive.  Plaintiffs' problem, however, is that, per the holding of Sandoz [v. Cingular Wireless LLC, 553 F.3d 913 (5th Cir. 2008)] the Fifth Circuit has already "tried this at home."

Silva v. Tegrity Pers. Servs., Inc., 986 F. Supp. 2d 826, 833-34 (S.D. Tex. 2013) (citation omitted); see also Hooks v. Landmark Indus., Civ. No. H-12-0173, 2014 WL 2981229, at *3 (S.D. Tex. July 1, 2014) ("This court must follow Fifth Circuit precedent, Justice Kagan's dissent in Genesis notwithstanding."); Masters v. Wells Fargo Bank S. Cent., N.A., No. A-12-CA-376-SS, 2013 WL 3713492, at *4 (W.D. Tex. July 11, 2013) ("In the absence of a controlling decision from the United States Supreme Court, this Court turns to circuit law.  The Fifth Circuit holds [that] an unaccepted offer fully satisfying a claim does moot the claim, and this Court is bound to apply this rule, Masters's pleas to follow Justice Kagan's dissent notwithstanding.") (citing Sandoz, 553 F.3d at 921 & n.5).

The long and the short of it is that since Genesis was decided: (1) two district courts in circuits without binding precedent barring application of the reasoning in Justice Kagan's dissent have adopted that reasoning; and (2) three district courts in circuits with binding precedent barring application of Justice Kagan's reasoning have indicated their approval of her approach, but were precluded by circuit

precedent from adopting it.  What the court has been unable to locate, despite a diligent search, is even a single district-court opinion, from a circuit that has not weighed in on the issue, that rejects Justice Kagan's reasoning.  The jurisprudence as a whole counsels in favor of adopting the reasoning of Justice Kagan and Diaz.

### D. This Court's response to Justice Kagan's Dissent

Based upon the foregoing survey of opinions from the circuit courts and the district courts, it should be evident that this court is strongly persuaded by Justice Kagan's dissent, and the opinions that have adopted its reasoning.  That said, the court notes that a substantial majority of the cases that have ruled on the question in this case have done so in cases involving class actions or collective actions, and the problem of defendants attempting to "pick off" individual plaintiffs.  See Scott, 740 F.3d at 1126 n.1 ("Since most plaintiffs are happy to have defendants surrender, this tactic [i.e., making offers of judgment] is most controversial as a means to short-circuit a looming class action or as a means to avoid paying attorney fees and costs in light of Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 508 (2001).") (parallel citations omitted).  This case stands on a different footing because it involves a sole plaintiff who is not attempting to press either a class

action or a collective action. But, the language in Justice Kagan's dissent, which focusses on the legal status of an unaccepted offer rather than any legal principle specific to class actions or collective actions, is broad enough to cover the circumstances of this case.

I find the reasoning in Justice Kagan's dissent, Diaz, and Yaakov persuasive and apply it here.[6] Accordingly, for the same reasons the courts in Diaz and Yaakov denied the motions to dismiss for lack of subject-matter jurisdiction that were before them, this court denies Industrial Concrete's motion to dismiss Count III and the portion of Count V that incorporates Count III.

E. Two Observations

The court begins by reminding Boucher that "[t]he plain purpose of Rule 68 is to encourage settlement and avoid litigation." Marek v. Chesny, 473 U.S. 1, 5 (1985) (citing Report of Proposed Amendments to Rules of Civil Procedure for the District Courts of the United States, 5 F.R.D. 433, 483

---

[6] In so ruling, the court notes Justice Kagan's observation that "a court has discretion to halt a lawsuit by entering judgment for the plaintiff when the defendant unconditionally surrenders and only the plaintiff's obstinacy or madness prevents her from accepting total victory." Genesis, 133 S. Ct. at 1536 (Kagan, J., dissenting). In the absence of any case law applying the "obstinacy or madness" exception to a situation similar to the one presented in this case, the court declines to dismiss Boucher's loss-of-consortium claim on the basis of that exception.

(1946)). In order to effectuate its purpose, Rule 68 has teeth: "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d); see also Yaakov, 987 F. Supp. 2d at 218 (citing Fed. R. Civ. P. 68(d)). It is difficult to see how Boucher could avoid paying Industrial Concrete's costs, as it appears that she could not possibly obtain a judgment against Industrial Concrete that is more favorable than the offer she received from Industrial Concrete.

The court's second observation arises from Boucher's rationale for rejecting Industrial Concrete's offer. As noted above, the most common reason for plaintiffs to reject offers of judgment is to preserve class actions or collective actions. Here, Boucher has a different purpose in mind. As she explains in her objection to Industrial Concrete's motion to dismiss:

> Nancy Boucher has the right to collect damages from either or both Defendants and it is her desire that Defendant Rioux pay loss of consortium. See NH RSA 507:7-e (joint and several liability applies to defendants who are 50 percent or more at fault and plaintiff can collect from any of the defendants).[7]

---

[7] Joint and several liability is a legal concept that generally applies where there are joint tortfeasors. Thus, it is not clear how that concept applies to this case, where Industrial Concrete and Rioux are not joint tortfeasors but, rather, Industrial Concrete is alleged to be vicariously liable for Rioux's tortious conduct.

> Defendant Rioux has not accepted responsibility for killing Raymond Boucher and he has not even apologized.
>
> . . . .
>
> The most significant damage component of Plaintiff Estate is the hedonic/loss of enjoyment of life component.  It is feared and believed that Defendant Industrial Concrete Services, Inc. is attempting to limit the trial evidence by its offer of judgment.

Pl.'s Obj. (doc. no. 10) §§ 6, 7, 9.  The problem is that if Boucher brings her loss-of-consortium claims against Industrial Concrete and Rioux to trial, the claim against Rioux is quite unlikely to come before the jury.  Industrial Concrete has conceded liability for loss of consortium and the amount of damages to which Boucher is entitled, i.e., the statutory maximum.  Given those concessions, and the bar against double recovery, there would be no reason to try the loss-of-consortium claim against Rioux, and the court would be unlikely to do so.  If Boucher is insistent on trying her loss-of-consortium claim against Rioux, she could move to voluntarily dismiss her claim that Industrial Concrete is vicariously liable for her loss of consortium.  But that move might make her liable for any costs Industrial Concrete incurred after its offer of judgment.  The foregoing matters, however, are questions for another day.

**Conclusion**

For the reasons detailed above, Industrial Concrete's motion to dismiss, document no. 8, is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 8, 2014

cc: William A. Mulvey, Jr., Esq.
    Patrick Mulvey, Esq.
    Gary M. Burt, Esq.
    Douglas N. Steere, Esq.
    Andrew R. Schulman, Esq.